IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-41444

_____


LEROY EVANS, JR

                                        Plaintiff - Appellant

        v.

CITY OF BISHOP

                                        Defendant - Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas
(C-98-CV-576)
_____
                    December 11, 2000
Before KING, Chief Judge, and CUDAHY[*] and WIENER, Circuit Judges.

PER CURIAM:[**]

    Plaintiff-Appellant Leroy Evans, Jr. appeals from the

district court's order granting Defendant-Appellee City of Bishop

summary judgment on Evans's discrimination claims.  For the

following reasons, we REVERSE.

_____

        [*]  Circuit Judge of the Court of Appeals for the Seventh
Circuit, sitting by designation.

        [**]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 17, 1998, Defendant-Appellee City of Bishop ("Bishop") advertised in the Kingsville Record the newly created position of administrative assistant. Shortly thereafter, Plaintiff-Appellant Leroy Evans, Jr., a former council member,[1] applied for the opening by handing his application directly to Charles Wesley Rogers, the mayor of Bishop.

Three days before the city council meeting, Cindy Villarreal, a Bishop municipal court clerk,[2] turned in her application for the advertised position. In total, Rogers received between five and ten applications. He reviewed only Evans's and Villarreal's applications[3] and chose Villarreal for a position that now combined the responsibilities of the posted administrative assistant position and the existing municipal judge position. Rogers did not interview Villarreal or inform her of his actions until the date of the city council meeting.

---

[1]  Evans left the city council on May 2, 1998 because he lost a bid for reelection.

[2]  Villarreal was the municipal court clerk at the time she submitted her application for the administrative assistant position. Although the record is not entirely clear on this point, it appears that she became the municipal court judge sometime after she submitted the application.

[3]  Rogers stated that he reviewed Evans's application because Evans handed the application directly to him and that he reviewed Villarreal's application because he heard that she had applied.

Rogers then went before the city council and received approval of his decisions.[4]

Evans filed suit against Bishop on December 18, 1998, asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). He alleged employment discrimination on the basis of race, color, age, and sex. On June 23, 1999, Bishop filed a motion for summary judgment.

The district court referred the case to a United States magistrate judge who, on August 26, 1999, filed her Memorandum and Recommendation. The magistrate judge recommended that Bishop's motion for summary judgment be granted and judgment rendered in Bishop's favor. In a decision dated November 29, 1999, the district court adopted the magistrate judge's conclusions[5] and granted Bishop's motion for summary judgment.

Evans timely appealed the decision to this court. On May 22, 2000, a panel of this court affirmed the district court in an unpublished opinion. See Evans v. City of Bishop, No. 99-41444 (5th Cir. May 22, 2000) (per curiam). However, on July 27, 2000, in light of the recent Supreme Court decision in Reeves v.

---

[4] Rogers did not make the applications available to the city council for review. He did tell the city council members that he had only examined Evans's and Villarreal's applications.

[5] As such, the magistrate judge's findings and conclusions will be referred to, hereinafter, as those of the district court.

3

<u>Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097 (2000), we withdrew our May 22 opinion.

## II. STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, applying the same standard as the district court. <u>See</u> <u>Walker v. Thompson</u>, 214 F.3d 615, 624 (5th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." <u>Allen v. Rapides Parish Sch. Bd.</u>, 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citation omitted). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. <u>See</u> <u>Burch v. City of Nacogdoches</u>, 174 F.3d 615, 619 (5th Cir. 1999).

4

### III. SOVEREIGN IMMUNITY DOES NOT BAR ADEA CLAIM

Bishop asserts that Evans's ADEA claim is barred because the ADEA has recently been held to be an invalid abrogation of a state's sovereign immunity. Bishop argues further that the law at the time of appellate review determines the existence of a live controversy.[6]

The Supreme Court in Kimel v. Florida Board of Regents, 120 S. Ct. 631 (2000), held that Congress exceeded its powers under § 5 of the Fourteenth Amendment by enacting the ADEA. As such, the states and their political subdivisions are protected by the sovereign immunity principle embodied in the Eleventh Amendment. In this case, however, Bishop is not a state; it is a city. Bishop argues that the Kimel Court noted that Congress did not have sufficient grounds to believe that state and local governments were engaging in age discrimination, see id. at 645; thus, Bishop concludes that it, as a city, is immune from ADEA suits.

However, the Kimel Court's comment about congressional findings has no relevance regarding whether a city has sovereign immunity from suit. That determination arises from the well-

---

[6] Bishop did not raise this issue in the district court and thus did so for the first time on appeal. However, Bishop did not waive appellate review because Eleventh Amendment "claims are jurisdictional in nature and may be raised and considered at any time." Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 726 n.2 (5th Cir. 1982) (citing Edelman v. Jordan, 415 U.S. 651, 677-78 (1974)).

settled law under Eleventh Amendment jurisprudence regarding "political subdivisions." Not all political subdivisions are automatically immunized when the state is immunized. See Earles v. State Bd. of Certified Pub. Accountants, 139 F.3d 1033, 1036 (5th Cir. 1998) (citing Edelman v. Jordan, 415 U.S. 651, 677-78 n.12 (1974)). "We must look to see whether the entity in effect[] stands in the shoes of the state itself." Id. (internal quotations and citation omitted).

In the overwhelming number of cases, Eleventh Amendment protection "does not extend to counties and similar municipal corporations." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (emphasis added). Thus, "independent local political subdivisions are not entitled to . . . [sovereign] immunity even though they exercise a 'slice of state power.'" Jacintoport Corp. v. Greater Baton Rouge Port Comm'n, 762 F.2d 435, 438 (5th Cir. 1985); see also City of Lafayette, La. v. La. Power & Light Co., 532 F.2d 431, 434 n.6 (5th Cir. 1976) ("[C]ities, counties, and other state political subdivisions are not considered 'the state' for purposes of Eleventh Amendment immunity.").

Bishop is a city, and there is no evidence that it is controlled by the State of Texas to such an extent that it stands in the shoes of the state. Thus, Bishop is not immune from ADEA suits.

## IV. PLAINTIFF SURVIVES SUMMARY JUDGMENT

Evans argues that because he made out a prima facie case of discrimination and illustrated that Bishop's proffered reasons were pretextual, he has presented a genuine issue as to Bishop's discriminatory motives.  He asserts further that <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097 (2000), explicitly did not require evidence beyond a prima facie case and pretext as a prerequisite for a plaintiff to survive summary judgment.  Bishop responds that although Evans put forth a prima facie case, <u>Reeves</u> does not alter the result of the previous panel decision because no rational trier of fact could conclude that its actions were motivated by discriminatory animus.  We do not agree.  We find that Evans fulfilled his duty under <u>Reeves</u> to demonstrate genuine issues of material fact as to his discrimination claims, and thus, the case should proceed to trial.[7]

---

[7]  Bishop repeatedly asserts on appeal that "a subjective belief of discrimination, however genuine, . . . [may not] be the basis of judicial relief." <u>Elliott v. Group Med. & Surgical Serv.</u>, 714 F.2d 556, 567 (5th Cir. 1983).  However, as we have explained in <u>Portis v. First National Bank</u>, in "the <u>Elliott</u> line of cases, the plaintiffs' testimony failed because it alone stood against unimpeached and uncontradicted opposing testimony."  34 F.3d 325, 330 n.10 (5th Cir. 1994).  Thus, when the plaintiff challenges the defendant's assertions and testimony, the "fact that [the plaintiff's] case-in-chief consists <u>solely</u> of [his] own testimony does not prevent [him] from establishing intentional discrimination." <u>Id.</u> (emphasis added); <u>see also</u> <u>Vance v. Union Planters Corp.</u>, 209 F.3d 438, 442 & n.3 (5th Cir. 2000) (citing <u>Portis</u> with approval).  In this case, Evans has challenged Bishop's claims and has put forth other evidence (in addition to his subjective belief).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court specified a burden-shifting approach to establishing proof of intentional discrimination via circumstantial evidence.[8]  First, Evans made out his prima facie case by showing that (1) he is an African-American male over sixty years old; (2) he was qualified for the job; (3) he was not hired; and (4) a Hispanic woman under forty years was subsequently hired for that position.  See id. at 802.  The burden then shifted to Bishop to articulate a legitimate, non-discriminatory reason for its decision.  See id. at 802-03; see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981) (stating that defendant's burden is only one of production and not persuasion).  Bishop claimed that economic factors and qualifications motivated its choice of Villarreal.  Rogers stated that he had previously considered combining the municipal court judge and administrative assistant positions because neither position required full-time attention and because such a consolidation would cut costs.  Rogers further maintained that he believed Villarreal was the best-qualified applicant.

Because Bishop produced non-discriminatory reasons, the "presumption of discrimination [created by Evans's prima facie case] drops out of the picture."  Reeves, 120 S. Ct. at 2106

---

[8]  This circuit has acknowledged that the McDonnell Douglas framework applies to both Title VII and ADEA claims.  See Russell v. McKinney Hosp. Venture, --- F.3d ----, 2000 WL 1785541, at *9 n.3 (5th Cir. 2000).

(internal quotations and citation omitted).  However, the fact finder "may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  Id. (quoting Burdine, 450 U.S. at 255 n.10).

The district court found that a trier of fact could conclude that both of Bishop's proffered reasons were pretextual.[9]  The court noted that the fact that combining the two positions would save money did not address why Villarreal was chosen over Evans.  Furthermore, Evans contests the timing of this consolidation decision, pointing out that it was not made until after Villarreal submitted her application (as the original posting was for a different position, and Villarreal herself did not know of the modification until the city council meeting).  We thus find that Evans has, at the very least, created a jury issue as to pretext on this proffered justification.  See Russell v. McKinney Hosp. Venture, --- F.3d ----, 2000 WL 1785541, at *4 (5th Cir. 2000) (reiterating that it is the province of the jury to choose among conflicting versions and make credibility determinations).

---

[9]  Although the district court found that Evans had established a prima facie case and pretext, the court stated that Evans failed to create a fact question about Bishop's discriminatory animus.  As we discuss infra in the text, this analysis was in error.

9

Evans also adduced evidence to support a finding of pretext regarding the qualification justification.  He points to a contrary statement by Rogers in his deposition that qualification was <u>not</u> his main priority.  Evans also questions how Villarreal could be deemed the most qualified when Rogers did not interview any other candidates and when he stated that he did not compare Evans's and Villarreal's qualifications.[10]  We agree with the district court that sufficient evidence exists for a jury to find that this justification is also pretextual.

Thus, Evans has established a prima facie case of discrimination and put forth sufficient evidence for a fact finder to find Bishop's proffered reasons to be pretextual. <u>Reeves</u> instructs that this showing is usually sufficient for a plaintiff's case to survive summary judgment:

> [O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.
>
> . . . .
>
> Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's

---

[10]  Bishop argues that Evans does not make a showing that Rogers's statement of Villarreal's superior qualifications was untrue.  Even assuming without deciding that Evans's case is lacking in this regard, Bishop's argument is without merit.  Pretext can be illustrated via circumstantial evidence, as has been done here, and does not require direct evidence.  <u>See</u> <u>United States Postal Serv. Bd. of Governors v. Aikens</u>, 460 U.S. 711, 714 n.3 (1983) (stating that the district court erred in requiring the plaintiff to submit direct evidence).

10

asserted justification is false, may permit the trier
of fact to conclude that the employee unlawfully
discriminated.

Reeves, 120 S. Ct. at 2108-09.

In this case, Evans has also put forth evidence beyond that
of the prima facie case and pretext.  Evans stated that one[11] city
council member made racially derogatory comments directed against
African Americans.  Reeves emphatically states that requiring
evidence of discriminatory animus to be "in the direct context"
of the employment decision is incorrect.  See id. at 2111; see
also Russell, --- F.3d ----, 2000 WL 1785541, at *7-*8 (5th Cir.
2000) (emphasizing that our "stray remarks" jurisprudence must be
viewed with caution in light of Reeves).  Thus, it would be
proper for a jury to take this evidence into account.  In
addition, Evans claimed that this same council member worked to
defeat him in his reelection.  The district court stated that
this was outside the realm of the dispute at hand.  However,
again, the same Reeves principle applies: any evidence that could
shed light on an employer's true motive must be considered.

The district court applied a now-disallowed legal standard
to analyze Bishop's summary judgment motion.  The Supreme Court

---

[11]    The Reeves facts are analogous here — derogatory
remarks also could not be attributed to all of the individuals
responsible for making the employment decision in Reeves.
However, the Supreme Court stated that "although [that was]
relevant, [it was] certainly not dispositive" and went on to find
the remarks of one decisionmaker to further support plaintiff's
case of discrimination.  See 120 S. Ct. at 2111.

11

in <u>Reeves</u> emphasized the importance of jury fact finding and reiterated that evidence of the prima facie case plus pretext may, and usually does, establish sufficient evidence for a jury to find discrimination. <u>See</u> <u>Reeves</u>, 120 S. Ct. at 2109. Thus, considering all of the evidence and taking all reasonable inferences in favor of the nonmovant Evans, a genuine issue exists as to whether Bishop intentionally discriminated against Evans.

## V. CONCLUSION

For the above-stated reasons, the judgment of the district court is REVERSED. We REMAND for further proceedings in light of this opinion. Costs shall be borne by Bishop.