United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 19, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-60144

URSULA STATEN

Plaintiff - Appellant

v.

NEW PALACE CASINO, LLC

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi, Biloxi
No. 1:03-CV-893

Before JONES, Chief Judge, and KING and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Ursula Staten appeals the district court's order granting summary judgment in favor of the defendant-appellee New Palace Casino on her employment discrimination and retaliation claims. For the following reasons, we AFFIRM in part and REVERSE and REMAND in part.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-appellant Ursula Staten ("Staten"), an African-American woman, began working for defendant-appellee New Palace Casino, LLC ("New Palace") in Biloxi, Mississippi, on November 9, 1999.  New Palace employed Staten as a cook in the Emerald Courtyard Buffet ("Buffet") at an hourly rate of $8.00.  On or around May 1, 2000, New Palace promoted Staten to the supervisory position of lead baker in Jazzmin's, one of the restaurants located in the casino hotel.  Staten received a pay increase to $10.00 per hour.

On May 8, 2000, before Staten began working in her new position, New Palace promoted James Reed ("Reed") to the sous chef position at Jazzmin's.[1]  Staten and Reed had a long and acrimonious history from working together at Casino Magic, another casino located in Biloxi.  As part of a Title VII lawsuit she initiated against Casino Magic in September 1998, Staten alleged that Reed had threatened her while they worked together as cooks at Casino Magic.  Staten and Casino Magic settled in February 2000.

After learning of Staten's prior lawsuit involving allegations against Reed, on May 16, 2000, New Palace transferred Staten back to the Buffet and promoted her to the supervisory

---

[1]  New Palace had employed Reed since January 11, 2000. Before his transfer to Jazzmin's, Reed worked as a lead line cook at Lawana's, another New Palace food venue.

position of lead cook on the graveyard shift.[2]  Staten worked the graveyard shift the entire time she was employed by New Palace. As a lead cook at the Buffet, Staten retained an hourly rate of $10.00.

Although Staten received no negative remarks or reprimands in her personnel file during her employment with New Palace, she experienced problems with certain Caucasian employees working under her supervision.  Staten testified that Jack Warren ("Warren"), who worked as a utility or dishwasher employee on the graveyard shift, refused to follow orders and used racial epithets against her when she would ask him to do something. Staten reported Warren's behavior to her supervisors on several occasions and requested and received a meeting with management after Warren's insubordination continued.  On October 4, 2001, New Palace gave Warren a final written warning, which stated that his next warning would result in suspension or termination. Staten alleges that, even though Warren's insubordination persisted throughout her employment with New Palace, Warren was

_____

[2]  Staten testified that Charles Dio, the Executive Chef, told her that he was aware of her previous lawsuit against Casino Magic and asked her if she had any problems working with Reed at the hotel.  Staten responded that she did not have any problems working with Reed.  Sometime after this conversation, Staten had a meeting with Garin Morton, the Kitchen Manager, who informed her that New Palace was going to transfer her back to the Buffet because of her prior lawsuit involving Reed.  Although Staten did not file any Equal Employment Opportunity Commission ("EEOC") charges against New Palace over her job change, she complained to New Palace's Food and Beverage Director, David Vickers ("Vickers").

not terminated.  Staten also testified that she had problems with Adrianne Wathern ("Wathern"), who told New Palace employee Leslie Walker ("Walker") on October 26, 2001, that she was going to hit Staten with a pan if Staten told her to do anything at work. Staten reported Wathern's alleged conduct to Jim Poolson ("Poolson"), the Kitchen Manager for the Buffet.  Poolson told Staten to get Walker to write and sign a statement describing what she heard Wathern say and he would look into it.  When Staten asked Poolson if he spoke with Wathern, he told her he did.  Staten testified that she could not remember having any additional problems with Wathern, mainly because New Palace terminated Wathern shortly thereafter for missing too many days of work.

In addition to reporting her problems with certain Caucasian employees, Staten repeatedly voiced concerns to the management about what she perceived to be racial inequalities in the workplace.  Staten testified that Poolson handled "records of discussion" or "write-ups" for Caucasian employees differently than write-ups for African-American employees.  Although she had to check with Poolson before she wrote up any employee, Staten testified that Poolson never gave her permission to write up Caucasian employees, instead saying he would take care of it, but always gave her permission to write up African-American employees.  Staten complained to the management about the disparate treatment and eventually brought her concerns to the

-4-

human resources department and upper management.

In November 2001, New Palace decided to close the Buffet for a complete renovation. As a result, New Palace furloughed thirty-one Buffet employees. Staten testified that before New Palace announced the furlough, Poolson told the six lead employees working at the Buffet, including Staten, that the furlough would not affect their jobs. On November 19, 2001, New Palace notified all Buffet employees by letters and notices that unless their names appeared on the new schedule, they would be furloughed as of November 25, 2001.

The new schedule showed that four of the six lead employees, Willie Jean Thomas ("Thomas"), Ruth Sadler ("Sadler"), Michael Westover ("Westover"), and Johnna Hughes ("Hughes"), retained their lead positions during the renovation. Instead of working as lead employees at the Buffet, however, New Palace transferred these employees to Jazzmin's, where they would be doing the same work with the exception of cooking for the Buffet.[3] Of these employees, Thomas is African-American, and Sadler, Westover, and Hughes are Caucasian. The two other lead employees, Staten and James Shuford ("Shuford"), both of whom are African-American, did not retain their lead positions during the renovation.

Staten testified that at the time the layoffs were

---

[3] Staten does not allege that these lead employees were transferred before the furlough. Rather, she claims they were retained and transferred after other Buffet employees were laid off.

-5-

announced, she was offered a position as an attendant in the employee dining room, a non-supervisory, lower-paying position that she claims amounted to a demotion.[4] Staten testified that she never got an opportunity to accept or reject the position because after she inquired as to whether her pay as an attendant would remain the same as her pay as a lead cook (at $10.00 per hour), without receiving an answer, she was furloughed on November 25, 2001. New Palace, on the other hand, claims that Staten declined the attendant position.

On January 9, 2002, Staten filed a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") against New Palace over her termination. Staten alleged that New Palace discriminated against her based on her race because she "was one of the only two supervisors laid off," with the other terminated supervisor being Shuford, who is also African-American. She claimed that New Palace retaliated against her based on her prior lawsuit against Casino Magic and her complaints to management about racial disparities in the workplace.

---

[4] The parties disagree over the timing and manner in which New Palace offered Staten an alternative position. Staten testified that her name appeared under the attendant position on a new schedule posted the day of the furlough. Staten also testified that no one from the Palace ever called her at home to offer her the position. New Palace claimed that after Staten was furloughed, she was contacted at home by Vickers about an employee dining room cook position starting at $8.00 per hour and for a different shift time.

In response to Staten's EEOC charge, New Palace took the position that all Buffet employees had been laid off. Specifically, in a letter dated March 29, 2002, New Palace asserted to the EEOC that:

> The entire food and beverage staff that worked in the buffet was notified on November 19, 2001 that they would be furloughed on November 25, 2001. . . . All the associates that worked in the buffet were furloughed or applied for other jobs in the casino. There was no criteria used in determining the furlough, all Associates would [sic] worked in the buffet were furloughed.

New Palace claimed that it chose to call the termination a "furlough" because it wanted to encourage all furloughed Buffet employees to reapply for their positions after the renovation was complete.

In early 2002, Staten began making inquiries about reapplying for a lead position at New Palace. Although Staten maintains that she sent in several applications, New Palace acknowledges receiving only one application on February 27, 2002. In her February 27, 2002 application, Staten applied for a lead baker or any other lead position. She checked on her application that she preferred the graveyard shift. Staten repeatedly called Troy Trettle ("Trettle"), who was hired by New Palace on January 16, 2002, as the new Food and Beverage Director, about reapplying for her old position. New Palace gave Trettle sole discretion and responsibility to interview and hire employees for the renovated Buffet, which was set to reopen in May 2002. During this process, Trettle interviewed over 200 applicants.

-7-

On April 25, 2002, two months after receiving her application, Trettle interviewed Staten for a sous chef position, which was a higher-paying position than the lead positions for which she had applied. To date, New Palace maintains that it was not hiring employees for lead positions in March and April of 2002, during the time Staten's application was under consideration. On May 10, 2002, New Palace contacted Staten informing her that she had not been hired for the sous chef position. Instead, Trettle had hired Mary Kostmayer, a Caucasian woman, for the sous chef position.

On June 3, 2002, Staten filed a second charge of discrimination and retaliation with the EEOC over New Palace's refusal to rehire her. On August 8, 2003, the EEOC issued determinations as to both the January and June 2002 charges, concluding that the evidence established violations of Title VII by New Palace, in that New Palace retaliated against Staten for engaging in a protected activity.[5] After receiving a right-to-sue letter from the EEOC, on November 19, 2003, Staten filed suit in federal court, asserting claims of race discrimination and

---

[5]  The EEOC determinations contain at least two factual errors. First, the EEOC found that Staten "was the only Lead Supervisor who was furloughed," but the record reveals that both Staten and Shuford were terminated on November 25, 2001. Second, the EEOC determined that Staten "applied and was interviewed for a Lead position," whereas the record indicates that Staten applied for a lead position but was interviewed for the sous chef position because New Palace claimed it was not hiring lead positions.

retaliation over her termination and New Palace's refusal to rehire her, pursuant to 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a).

Throughout the EEOC investigation and up until the date it filed its motion for summary judgment, New Palace maintained that all Buffet employees had been terminated on November 25, 2001, in connection with the renovation. George Conwill ("Conwill"), New Palace's Chief Financial Officer and designated deponent under FED. R. CIV. P. 30(b)(6), testified during his deposition on August 10, 2004, that New Palace had laid off all Buffet employees:

> STATEN'S COUNSEL: Could you please tell me any and all reasons Ms. Ursula Staten was chosen to be placed on furlough status on November the 25th, 2001?
>
> CONWILL: We made a business decision to remodel the buffet on the third floor of the casino . . . . So all the personnel that worked in the buffet we laid off for furlough, and they could reapply for a job when we reopened the buffet. So Ursula was terminated and laid off along with 31 others that were in the buffet. I believe it was 31 people.
>
> . . . .
>
> STATEN'S COUNSEL: And your testimony here today is that you are not aware or you don't know one way or the other if there were non-African American lead employees in the employment of the casino in the buffet on November 25th, 2001?
>
> CONWILL: I can surmise that if there were any African American leads at the date that we--that worked in the buffet

-9-

> when we furloughed everyone, they would have been furloughed, too. So by summation, I would say no, they were not, that those are the only leads or they would have been terminated or furloughed with everyone else.

> . . . .

> STATEN'S COUNSEL: I'm talking about non-African American leads. You don't know one way or the other if there were non-African--

> CONWILL: Non-African or African American leads. If they would have been classified in the buffet at the time of the furlough, they would have been furloughed or laid off.

> STATEN'S COUNSEL: And not transferred?

> CONWILL: And not transferred.

> . . . .

> STATEN'S COUNSEL: [A]ny criteria used to determine which employees would be subjected to the furlough and which employees were not?

> CONWILL: Well, the criteria was those that worked in the buffet that we were closing would be laid off or furloughed.

> STATEN'S COUNSEL: That's all shifts, day, night, graves?

> CONWILL: That would be--yeah, that would be whoever worked in that venue.

Even after Staten's counsel asked Conwill why certain lead employees, including Thomas, Sadler, Westover, and Hughes, were not furloughed, Conwill's testimony remained the same:

> STATEN'S COUNSEL: You don't know why those people were not subjected to the furlough?

-10-

CONWILL:              I do not.

STATEN'S COUNSEL:     It was your testimony that every employee of the buffet was subjected to the furlough?

CONWILL:              That was in the buffet at the time of the furlough.

STATEN'S COUNSEL:     On November 25th, '01?

CONWILL:              Yes.

With regard to its decision not to interview and rehire Staten for a lead position, New Palace took the position that it was not hiring lead personnel during the period in which Staten's application was under consideration. During his deposition, Trettle testified that he did not "believe [he] hired any lead positions" but would "have to think about it for a minute." He admitted that he hired April Joyner as a lead baker, but "as far as hiring other leads, [he] [couldn't] really say [he] really hired other leads as per se that [they're] a lead position." Trettle also testified that he was not aware that Staten had filed a charge of discrimination and retaliation against New Palace with the EEOC.

On November 1, 2004, New Palace filed a motion for summary judgment. In support of its motion for summary judgment on Staten's termination claims of race discrimination and retaliation, New Palace attached an affidavit of Conwill dated November 1, 2004, in which Conwill articulated a different reason for New Palace's decision to terminate Staten. Conwill explained

that the four lead employees who were retained had more tenure with the company than Staten,[6] and Jazzmin's, the restaurant to which the four lead employees were transferred, did not operate a graveyard shift, which was the shift Staten had worked her entire employment with New Palace.[7] Conwill acknowledged that he previously had given a different reason for Staten's termination and explained that when he gave his 30(b)(6) deposition, he "was not aware that four Lead Cooks from the first and swing shifts of the Buffet were transferred to Jazzmin's."[8]

New Palace also moved for summary judgment on Staten's refusal to rehire claims of race discrimination and retaliation. New Palace maintained that it did not hire Staten for a lead position or a sous chef position because "the un-refuted evidence demonstrates that Mr. Trettle was not hiring additional 'Lead' personnel for the Buffet and he believed that Plaintiff did not possess the basic knowledge to work as a Sous Chef in the

---

[6] New Palace originally hired these employees on the following dates: Thomas on January 28, 1997; Sadler on January 28, 1997; Westover on January 28, 1997; and Hughes on February 17, 1999. Staten and Shuford, the two lead employees who were laid off, were hired on November 9, 1999, and June 5, 2000, respectively.

[7] The district court apparently accepted New Palace's assertion that both Staten and Shuford worked the graveyard shift. While Staten admitted in her deposition that she worked the graveyard shift the entire time she was employed by New Palace, the record indicates that Shuford worked the swing shift (and not the graveyard shift).

[8] Despite Conwill's claimed ignorance, the transfer documents for all four lead employees bear his initials.

-12-

Buffet." New Palace further asserted that Trettle had no knowledge of Staten's January EEOC charge against New Palace when he interviewed Staten and decided not to hire her to work in the renovated Buffet.

On February 9, 2005, the district court granted New Palace's motion for summary judgment. First, with regard to Staten's termination claims of race discrimination and retaliation, the district court determined that Staten failed to produce evidence of pretext or provide "any evidence that the Palace's decision to terminate her employment, while at the same time transferring the Caucasian employees to another restaurant, was motivated by Staten's race" or "any evidence from which a jury may infer the Palace retaliated against her . . . ." Although the district court acknowledged the inconsistencies between New Palace's proffered reasons for terminating Staten, it apparently accepted New Palace's explanation, finding that "the Palace explained that [Conwill] was not aware until his deposition that four lead employees were not subject to the furlough." After considering Staten's refusal to rehire claims of race discrimination and retaliation, the district court held that Staten had produced no evidence showing that New Palace's justifications for refusing to hire Staten were false or pretext for race discrimination or retaliation. On February 18, 2005, Staten filed this appeal.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de

-13-

novo, applying the same standard as the district court.  See <u>Blow v. City of San Antonio</u>, 236 F.3d 293, 296 (5th Cir. 2001). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  On a motion for summary judgment, we view all facts in the light most favorable to the nonmoving party.  <u>Blow</u>, 236 F.3d at 296.

### III.  DISCUSSION

A.  <u>Title VII Framework</u>

Under Title VII, a plaintiff can prove a claim of intentional discrimination or retaliation by either direct or circumstantial evidence.  See <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000) (intentional discrimination); <u>Septimus v. Univ. of Houston</u>, 399 F.3d 601, 608 (5th Cir. 2005) (retaliation).  Cases built upon the latter, like this one, are analyzed under the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  See <u>Russell</u>, 235 F.3d at 222; <u>Septimus</u>, 399 F.3d at 608.  Under the <u>McDonnell Douglas</u> framework, the plaintiff first must establish a prima facie case of discrimination or retaliation.  See <u>Russell</u>, 235 F.3d at 222 (discrimination);[9] <u>Gee v. Principi</u>, 289 F.3d 342, 345 (5th Cir.

_____

[9] A prima facie case of discrimination requires the plaintiff to show that: (1) she is a member of a protected group;

-14-

2002) (retaliation).[10]  If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action.  See Russell, 235 F.3d at 222; Gee, 289 F.3d at 345.  The employer's burden is only one of production, not persuasion, and involves no credibility assessments.  Russell, 235 F.3d at 222 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981)).  If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose.  See id.  To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.  Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003) (citing Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001), cert. denied, 535 U.S. 1078 (2002)).

A plaintiff may establish pretext "by showing that the

---

(2) she was qualified for the position at issue; (3) she was discharged or suffered some adverse employment action by the employer; and (4) she was replaced by someone who is not a member of her protected group or she was treated less favorably than others similarly situated to her.  Byers v. Dallas Morning News, 209 F.3d 419, 426 (5th Cir. 2000).

[10]  To prove a prima facie case of retaliation, the plaintiff must establish that: (1) she participated in activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003).

-15-

employer's proffered explanation is false or 'unworthy of credence.'" Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). An explanation is false or unworthy of credence if it is not the real reason for the employment action. Id. "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination [or retaliation] even without further evidence of the defendant's true motive." Id. "No further evidence of discriminatory animus is required because 'once the employer's justification has been eliminated, discrimination [or retaliation] may well be the most likely alternative explanation.'" Id. (quoting Reeves, 530 U.S. at 147). As the Supreme Court explained in Reeves,

> the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.

530 U.S. at 147 (internal quotation marks and citations omitted); see also Gee, 289 F.3d at 348 (applying Reeves to a Title VII retaliation claim and noting "that a factfinder may infer the ultimate fact of retaliation from the falsity of the explanation").

B. Application of Title VII Framework

The district court assumed--and New Palace concedes for the

-16-

purposes of summary judgment--that Staten established a prima facie case for each of her claims of race discrimination and retaliation. The district court determined that New Palace presented legitimate, nondiscriminatory and nonretaliatory reasons for terminating and refusing to rehire Staten, and Staten does not contest this determination on summary judgment. Therefore, the only issue presented for our review is whether Staten has produced sufficient evidence to indicate that New Palace's proffered legitimate, nondiscriminatory and nonretaliatory reasons were pretext for discrimination and retaliation.

### 1. Discrimination and Retaliation Based on Staten's November 2001 Termination

Staten points out that New Palace offered inconsistent explanations throughout the litigation as to why it terminated her, initially taking the position before the EEOC and in Conwill's 30(b)(6) deposition that all Buffet employees had been furloughed, and later explaining in Conwill's affidavit that the four lead employees who were retained had more seniority than Staten and worked different shifts. Staten maintains that New Palace's inconsistent explanations are enough to withstand summary judgment and that the district court misapplied <u>Reeves</u> in concluding otherwise. Staten alternatively contends that she should be allowed to prove her termination claims under the mixed-motive framework, as set forth by this court in <u>Rachid v.</u>

<u>Jack in the Box, Inc.</u>, 376 F.3d 305 (5th Cir. 2004).

New Palace counters that it made a "mistake" in offering inconsistent justifications for its decision to terminate Staten and that when it realized its mistake, it corrected the record and provided all relevant documentation to Staten. New Palace argues that <u>Reeves</u> requires something more than a mistake or an inconsistent explanation for an issue of discrimination or retaliation to reach a jury and that the district court properly granted summary judgment on Staten's termination claims. We disagree.

When an employer offers inconsistent explanations for its employment decision at different times, as here, the jury may infer that the employer's proffered reasons are pretextual. <u>See</u> <u>Gee</u>, 289 F.3d at 347-48 (determining summary judgment was improper where the plaintiff produced evidence that the employer's explanation for her non-selection had been inconsistent and there were discrepancies between the decisionmaker's affidavit and testimony); <u>see also</u> <u>EEOC v. Sears Roebuck & Co.</u>, 243 F.3d 846, 852-53 (4th Cir. 2001) ("[T]he fact that Sears has offered different justifications at different times for its failure to hire Santana is, in and of itself, probative of pretext.") (citing, inter alia, <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424, 432 (1st Cir. 2000) ("[W]hen a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated

-18-

reasons are pretextual."), and <u>EEOC v. Ethan Allen, Inc.</u>, 44 F.3d 116, 120 (2d Cir. 1994) (holding that a reasonable juror could infer that the shifting and inconsistent explanations given by the employer at trial were pretextual, developed over time to counter the evidence suggesting discrimination)); <u>Zaccagnini v. Chas. Levy Circulating Co.</u>, 338 F.3d 672, 677 (7th Cir. 2003) ("[T]he consistency of the explanation provided by an employer at the time of an employment decision and in an administrative proceeding is evidence of the veracity of the employer's explanation at summary judgment."). The timing of an employer's changing rationale is also probative of pretext. <u>See</u> <u>Jaramillo v. Colo. Judicial Dep't</u>, 427 F.3d 1303, 1311 (10th Cir. 2005) ("The timing of the change [in the employer's explanation for its decision] has been found to support the inference of pretext when it occurs after significant legal proceedings have occurred."); <u>Sears Roebuck & Co.</u>, 243 F.3d at 853 ("[A] factfinder could infer from the late appearance of Sears's current justification that it is a post-hoc rationale, not a legitimate explanation for [its employment decision].").

Given New Palace's inconsistent explanations for Staten's termination and the timing of its changing rationale, a factfinder could conclude that, in the words of the Supreme Court, New Palace's "asserted justification is false" or "unworthy of credence." 530 U.S. at 148, 147; <u>see also</u> <u>Russell</u>, 235 F.3d at 225 (reiterating that it is the province of the jury

-19-

to choose among conflicting versions and make credibility determinations).  Contrary to the district court's determination, Staten was not required to produce additional independent evidence of discrimination or retaliation for New Palace's decision to terminate her.  See Gee, 289 F.3d at 348 (stating that under Reeves "a plaintiff may withstand a motion for summary judgment without adducing additional, independent evidence" of discrimination or retaliation).  Rather, as this court previously has explained, "evidence of the prima facie case plus pretext may, and usually does, establish sufficient evidence for a jury to find discrimination."  Evans v. City of Bishop, 238 F.3d 586, 592 (5th Cir. 2000).[11]  Accordingly, we reverse the district court's order granting summary judgment on the issues of race discrimination and retaliation for Staten's termination.  Having reached this conclusion, we need not address Staten's alternative arguments under Rachid and the mixed-motive framework.

---

[11]  Under Reeves, there are two instances in which a showing of pretext is insufficient to get the plaintiff past summary judgment: (1) when the record conclusively reveals some other, nondiscriminatory or nonretaliatory reason for the employer's decision; or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination or retaliation occurred.  530 U.S. at 148; see Russell, 235 F.3d at 223 (describing the use of these instances as "rare").  The parties have not argued--and we do not conclude --that this is one of those "rare" exceptions to Reeves: the record does not conclusively reveal some other reason for the termination (other than the two inconsistent explanations), and Staten's showing of pretext is not weak.  See Laxton, 333 F.3d at 585.

## 2.  Discrimination and Retaliation Based on New Palace's May 2002 Refusal to Rehire Staten

Staten contends that she can rebut the nondiscriminatory and nonretaliatory reasons articulated by New Palace for its refusal to rehire her for a lead position and that the district court erred in not properly evaluating her challenges of pretext.[12] First, Staten argues that New Palace's explanation that it was not hiring lead personnel is a pretext for discrimination and retaliation because the record conclusively shows that New Palace was hiring lead employees in March and April of 2002.  Second, Staten claims that New Palace's justification that Trettle did not know about her January EEOC charge is a pretext for retaliation because Trettle's testimony is not credible.  Staten alternatively contends that she should be allowed to prove her refusal to rehire claims under the mixed-motive framework as set forth in Rachid.

New Palace maintains that Trettle was not hiring lead personnel when Staten's application was under consideration and therefore this justification is not a pretext for discrimination or retaliation.[13]  Responding to Staten's argument that New

---

[12]  Staten does not challenge the district court's conclusion that she failed to produce sufficient evidence to support her contention that she was more qualified than Mary Kostmayer for the sous chef position.

[13]  New Palace has represented in its memoranda and briefs before the district court and this court that it was not hiring lead personnel.  See, e.g., R. at 80, 232 (stating that "the un-refuted evidence demonstrates that Mr. Trettle was not hiring

-21-

Palace retaliated against her by refusing to rehire her, New Palace asserts that the uncontroverted evidence shows that Trettle did not know Staten had filed an EEOC charge against New Palace at the time he interviewed her and made his decision not to hire her.

Our review of the record supports Staten's claim of pretext regarding New Palace's explanation that it was not hiring lead personnel.  The record indicates that New Palace hired one lead baker and three lead cooks in March and April of 2002:  April Joyner as a lead baker on March 26, 2002, and Rodney Bryant, Tyree Valentine, and Sommai Boudreaux, as lead cooks on March 7, 2002, March 19, 2002, and April 17, 2002, respectively.[14]  This unrefuted evidence directly contradicts New Palace's explanation that it was not hiring any lead personnel in March and April of 2002, when Staten submitted her application for consideration.

additional 'Lead' personnel for the Buffet"); id. at 239 (noting at the time Trettle was interviewing candidates, he was not hiring any additional lead positions).  At oral argument, New Palace's attorney reiterated the company's position that it was not hiring lead personnel during March and April of 2002.

[14]  The record also shows that New Palace hired Sheryl Hughey ("Hughey") as a lead baker on April 25, 2002.  New Palace explained before the district court that Hughey was not hired as a lead baker in April 2002, but instead was hired as a cook in April and transferred to the lead baker position on June 24, 2002.  It is not clear why New Palace did not attempt to refute the evidence concerning its hiring of Joyner, Bryant, Valentine, and Boudreaux, as lead employees in March and April of 2002, before the district court or this court.  This evidence was included as one of the exhibits that Staten submitted to the district court with her response to New Palace's motion for summary judgment.

Considering all the facts and drawing all inferences in favor of Staten, a factfinder is simply not required to believe New Palace's proffered justification and could "reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves, 530 U.S. at 147; see also Evans, 238 F.3d at 592 ("[E]vidence of the prima facie case plus pretext may, and usually does, establish sufficient evidence for a jury to find discrimination.").[15]  Because this is the only explanation given by New Palace on Staten's race discrimination claim and because Staten has submitted sufficient evidence to show that this explanation is false, we reverse the district court's order granting summary judgment on the issue of race discrimination for the refusal to rehire claim.

Although Staten has successfully rebutted New Palace's explanation that it was not hiring lead personnel, she must rebut each nonretaliatory reason articulated by New Palace to prevail on her claim of pretext for her retaliation claim. See Laxton, 333 F.3d at 578.  In addition to its explanation that it was not hiring lead personnel, New Palace offered Trettle's deposition, in which he testified that he did not know that Staten had filed an EEOC charge against New Palace at the time he interviewed her and made the decision not to hire her.  Staten has produced no

---

[15]  Again, the parties have not argued--and we do not conclude--that this is one of those "rare" exceptions to Reeves. See Laxton, 333 F.3d at 585; cf. Reeves, 530 U.S. at 148.

-23-

evidence to contradict New Palace's asserted explanation; instead, she attempts to show pretext by challenging the veracity of Trettle's testimony. Specifically, Staten points to the fact that Trettle could remember only her name after interviewing over 200 applicants, Trettle had her application for two months before interviewing her, and Trettle's testimony that she answered his interview questions incorrectly is refuted by her testimony and affidavits filed by two other applicants.

"To raise an inference of pretext in the face of the employer's legitimate, non[retaliatory] explanation, the plaintiff must undermine the employer's credibility to the point that a reasonable jury could not find in its favor." Jaramillo, 427 F.3d at 1310 (citing Russell v. Acme-Evans Co., 51 F.3d 64, 70 (7th Cir. 1995)). In other words, the plaintiff must present evidence so "that a jury could find that the employer (or its decisionmaker) lacks all credibility." Id. (internal quotation marks and citation omitted) (emphasis added). Staten's attempts to undermine Trettle's testimony are unpersuasive. Her alleged irregularities in the interview process are simply not strong enough so that a jury could find that Trettle "lacks all credibility." See id.

Because we conclude that Staten's attempted showing of pretext is insufficient, we must address Staten's alternative argument that in light of Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid, 376 F.3d 305, she should be allowed to

-24-

assert a mixed-motive alternative to the "but for" standard required for retaliation claims.[16] Under this lower standard, Staten would only have to prove sufficient evidence that her EEOC charge against New Palace was a "motivating factor" in New Palace's decision not to rehire her. This circuit has not extended the holdings of Desert Palace or Rachid, both of which concern discrimination claims, to Title VII retaliation claims. See Septimus, 399 F.3d at 607 n.7 (refusing to decide whether Desert Palace or Rachid affect the legal standard for Title VII retaliation claims). Without deciding whether the mixed-motive framework modifies the McDonnell Douglas framework for Title VII retaliation claims, we conclude that Staten has provided no evidence, direct or circumstantial, from which a reasonable jury could logically infer that her EEOC charge was a motivating factor in New Palace's refusal to rehire her. Accordingly, we affirm the district court's order granting summary judgment on Staten's retaliation claim for New Palace's refusal to rehire

---

[16] In Rachid, this court held that Desert Palace modifies the McDonnell Douglas analysis in Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, cases such that a plaintiff can proceed on a mixed-motives theory even without direct evidence. In other words, the plaintiff can offer sufficient evidence to create a genuine issue of material fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." 376 F.3d at 312 (internal quotations marks, citation, and alteration omitted).

her.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment on the issue of retaliation for New Palace's refusal to rehire Staten, and REVERSE and REMAND the district court's order granting summary judgment on the issues of race discrimination and retaliation for Staten's termination and race discrimination for New Palace's refusal to rehire her.

AFFIRMED in part; REVERSED and REMANDED in part.