# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2025

Lyle W. Cayce
Clerk

No. 24-30546

Thomas L. Glover,

*Plaintiff—Appellant*,

*versus*

Lafayette City-Parish Consolidated Government;
Joshua Guillory,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:23-CV-270

Before Higginson, Ho, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Thomas Glover served as Chief of Police for the Lafayette, Louisiana Police Department for roughly ten months before he was fired. Glover alleges he was terminated due to his race, while Lafayette City-Parish asserts that he was fired because of a "loss of confidence" in his ability to lead the police force. Glover sued, alleging claims under several anti-discrimination

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

laws. The district court granted summary judgment for Lafayette City-Parish. We affirm.

## I.

Following the killing of a black man by three Lafayette Police Department (LPD) Officers, the Lafayette City-Parish Consolidated Government (LCG) commenced a national search for a new Chief of Police. In December 2020, Thomas Glover, a black man, was selected for the position by LCG Mayor-President Joshua Guillory. Before serving as LPD's Chief of Police, Glover worked for the Dallas Police Department for thirty-six years. As Chief, Glover reported to both Guillory and LCG's Chief Administrative Officer, Cydra Wingerter.

Just ten months into his tenure, Glover was terminated by Guillory. According to LCG, Guillory and Wingerter had "lost confidence in [Glover's] ability to carry out the duties and responsibilities of the Chief of Police" because Glover allegedly made misrepresentations to a councilman and to the Municipal Fire and Police Civil Service Board (CSB) regarding an investigation into an officer for alleged harassment. LCG asserts that Glover was informed of this "clear reason for his termination"—the "lost confidence" on the part of local leaders—at the time he was fired.

Glover contests that he was provided any reason for his termination at the time. He asserts that it was not until he commenced legal action that LCG informed him that his firing was because of Guillory and Wingerter's "lost confidence." He also more broadly disputes LCG's version of events, asserting that he never made any misrepresentations to the CSB. Rather, in Glover's telling, when he began to discipline officers for alleged misconduct, the police union took umbrage and began to pressure Guillory to fire him. Glover alleges that there was a culture of racial discrimination, generally and against him in particular, within the police force. He avers that LCG leaders

fabricated their "loss of confidence" after the fact because the first time LCG documented a reason for his termination was after litigation commenced.

After firing Glover, LCG hired Wayne Griffin as interim Chief of Police in October 2021. Griffin was a long-time LPD officer who had been the runner-up in the national search that led to Glover's hiring. Like Glover, Griffin is a black man. However, two weeks after installing Griffin as interim Chief, LCG placed him on leave to investigate allegations of sexual harassment against him. About three months later, in January 2022, LCG terminated Griffin as Chief, though he was eventually reinstated by the CSB to his previous post, that of LPD sergeant. LCG then hired another interim Chief of Police, Monte Potier, a white man. Potier left the position roughly a year later. Thereafter, LCG hired Judith Estorage, a white woman, to serve as Chief of Police. Estorage was hired as a "permanent," rather than "interim," Chief.

Glover first challenged his termination before the CSB, alleging violations of the LCG Fire & Police Civil Service Rules. After the CSB denied relief, he unsuccessfully appealed to state court. He then filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in August 2022. He received a right-to-sue letter from the EEOC in November 2022 and filed this action in February 2023, naming LCG and Guillory in his personal and official capacities. In his complaint, Glover alleged that he was fired because of his race and asserted claims under Title VII, *see* 42 U.S.C. § 2000e, as well as 42 U.S.C. §§ 1981 and 1983. After the discovery deadline, the defendants moved for summary judgment, which the district court granted. The court concluded that Griffin, rather than Potier or Estorage, was Glover's replacement as Chief, such that Glover failed to show that he was replaced by someone outside his protected group. The court further determined that Glover had not otherwise adduced sufficient indicia of discriminatory intent on the part of LCG or Guillory.

The court held that Glover thus failed to substantiate a prima facie case of discrimination and dismissed his claims. Glover now appeals, though he challenges only the dismissal of his Title VII claim against LCG.

## II.

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 315 (5th Cir. 2020) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). "We construe all facts and inferences in the light most favorable to the nonmov[ant] . . . ." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).

## III.

When, as in this case, a defendant seeks summary judgment on a Title VII employment discrimination claim grounded on circumstantial evidence, we apply the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). First, "[t]he plaintiff must establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995). To do so, a plaintiff must show, *inter alia*, that he was replaced by someone outside his protected group, *e.g.*, *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021), or "otherwise that his

discharge was because of his [race],"[1] *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985). Second, once the plaintiff establishes a prima facie case, "the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason." *Id.* And third, assuming the defendant hurdles that bar, "[t]he burden . . . shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination." *Id.*

The district court entered summary judgment for LCG because the court concluded that Glover failed to substantiate a prima facie case. The court reasoned that because Glover's immediate replacement as Chief was also black, Glover could not show that he was replaced by someone outside his protected group. The court also emphasized that Guillory both hired and fired Glover, giving rise to the "same actor inference." *See, e.g.*, *Russell*, 235 F.3d at 228 n.16 ("[W]hen the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff," a court may infer "that discrimination was not the motive behind plaintiff's termination.").

As to the first basis for the district court's summary judgment for LCG, the parties debate whether Glover's being replaced as Chief by Wayne Griffin frustrates Glover's ability to show that he was replaced by someone outside his protected group. Glover argues that Griffin was only hired as

---

[1] Even if a plaintiff cannot show that he was replaced by someone outside of his protected group, this court has recognized that he can nonetheless establish a prima facie discrimination claim by offering "sufficient evidence to convince this [c]ourt that his [protected characteristic] was a motivating factor in his employer's decision to terminate him." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000); *see also Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997) (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)) ("While the fact that one's replacement is of another [race] 'may help to raise an inference of discrimination, it is neither a sufficient nor a necessary condition.'").

"interim" Chief and was effectively fired after two weeks on the job, such that Griffin, like Potier after him, cannot be considered to have been Glover's replacement. LCG counters that "even though [Griffin's] status may have been interim at that time," Guillory, Wingerter, and other LCG leaders intended for "Griffin to be given the opportunity to serve as Chief of Police long term," such that the district court properly treated Griffin as Glover's replacement in assessing the viability of Glover's prima facie case.

This court has never decided whether an interim hire may constitute a plaintiff's replacement in evaluating whether the plaintiff has alleged a prima facie case of discrimination. *See Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 322 (5th Cir. 2021) (discussing the issue). Regardless, in this case, though Guillory and Wingerter testified that they intended for Griffin to serve as Chief of Police long term, Glover contends that the record of Griffin's brief, troubled tenure and the fact that he, unlike Glover and Estorage, was referred to by all the contemporaneous evidence as an "interim" hire suggest a fact dispute over whether Griffin replaced Glover, at least for purposes of whether Glover can sustain this element of his claim.

Similarly, the district court determined that Glover's race was not otherwise a motivating factor for his termination. The court concluded that because Guillory and Wingerter both hired and fired Glover, and because they also hired Griffin, even if temporarily, Glover failed to show discriminatory intent behind his termination. Glover counters that even if Guillory and Wingerter lacked any discriminatory motivation, the police union was animated by such intent and exerted pressure on Guillory to fire Glover. In support, he offers testimony substantiating racially charged remarks by other officers. And he contends that documents related to his handling of the internal investigation that precipitated his firing were potentially forged to fabricate his alleged misrepresentations to the CSB.

Even if the foregoing record is sufficient to hurdle the first step of the *McDonnell Douglas* inquiry, i.e., assuming Glover has substantiated a prima facie case of discrimination, his claim still fails. That is because LCG offers a legitimate, nondiscriminatory reason for firing Glover, and Glover fails to rebut LCG's proffered reason as a mere pretext for discrimination.

Under *McDonnell Douglas*, once a plaintiff presents a prima facie claim, the defendant has the burden to show a legitimate, nondiscriminatory reason for the action taken against the plaintiff. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016). The burden "is one of production, not persuasion," meaning this step "involves no credibility assessment." *Id.* at 236. Here, assuming *arguendo* that Glover has made out a prima facie claim, all LCG must do is "clearly set forth, through the introduction of admissible evidence, the reasons for the adverse employment action." *Id.*

LCG meets that bar. LCG asserts that it fired Glover because it "lost confidence" in him based on two alleged misrepresentations he made to government officials. It contends that Glover

> misrepresented to the [CSB], during [a] meeting, that he had ordered the LPD's Internal Affairs Division to conduct an Internal Affairs investigation of a formal complaint filed [by] a citizen, Gerald Brooks, against a police officer, Captain Michael Brown. In this connection, they also became aware that [Glover] had misrepresented that the body cam video of the incident made subject of Mr. Brooks' complaint had been reviewed before the complaint was dismissed as 'unfounded' by [Glover].

This evidence is supported by admissible testimony and satisfies LCG's burden of production. *See id.* Therefore, "the analysis proceeds to the third step." *Id.*

To show that his employer's reason for taking the adverse action is pretextual, "the employee must produce evidence, or rely on evidence already produced, that refutes or contests the employer's evidence of a legitimate, nondiscriminatory reason." *Id.* at 236–37 (cleaned up). To put a finer point on it, to defeat summary judgment, Glover must "offer sufficient evidence to create a genuine issue of material fact either (1) that [LCG's] reason is not true, but is instead a pretext for discrimination . . . or (2) that [LCG's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [Glover's] protected characteristic." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Glover fails to do so, as to either avenue.

At most, the evidence suggests that one reason behind Glover's termination was how he handled officer discipline. The only evidence he presents that he was fired based on his race comes from two sworn statements—his own, and another from a former LPD sergeant, Edward Washington. In his testimony, Washington provided some background context about Glover's hiring, the racial environment in the department, and his belief that "[r]ace played a role in the termination":

> Chief Glover was the first African American chief. We did have a Black deputy, and when it came time for him to apply for chief, there was some civil service rules that they were trying to get across the civil service board along with the union decided that hey, they didn't want to support that. And so, Glover was our first Black police chief. I think that the perception had gotten out that Glover was punishing white officers at a higher rate than he was punishing Black officers. That's why I am of the opinion that race was a factor in the termination.

But Washington's "opinion," even viewed in the light most favorable to Glover, does not show that Glover was fired because of *his* race. It instead

puts at issue his handling of race-related matters, including officer discipline, within LPD. And because "Title VII makes it unlawful for an employer to fire an employee because of the employee's race," *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011), Washington's otherwise conclusory opinion that "race was a factor" is not enough to show that LCG's stated reason for terminating Glover was a pretext for discrimination.

The same can be said for Glover's own testimony. Glover's belief that he was fired because of his race stems from his disciplining officers for, *inter alia*, striking handcuffed prisoners.[2] He avers that the police union "came out against [him]" due to those incidents, and also that "[a]t the beginning of [his] tenure and throughout [his] service, [he] was referred to by certain factions as 'woke,' 'Black Lives Matter Chief,' 'Militant,' 'Black activist,' etc." As for Guillory, Glover alleges that he "secretly met with union representatives and listened to their complaints about white officers who were disciplined for improper use of force" prior to firing Glover.

As with Washington's sworn statements, none of these allegations show that Glover's race was a motivation for LCG's firing him or that LCG's loss of confidence in his performance as Chief was pretextual. To the extent the union "came out against [him]," it was for how Glover disciplined officers, not because of his race. There is nothing in the summary judgment record that demonstrates the union was animated by Glover's race, rather than his approach to disciplinary decisions and racially-tinged issues within the department.

More importantly, alleging that "certain factions" made discriminatory remarks is insufficiently specific to salvage Glover's claims.

---

[2] Glover disciplined both white and black officers during his tenure as Chief of Police.

For a discriminatory remark "uttered by one other than the formal decision maker" to factor into an employment discrimination claim, the speaker must be "in a position to influence the decision." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003). Here, Glover provides no indication of who comprised these "factions" or made these remarks—much less that the remarks influenced Guillory's decision to terminate Glover. So, to the extent that the remarks signal a charged racial environment in LPD, or even racial animus on the part of "factions" within the department against Glover, there is no evidence that the remarks influenced Guillory, as the decisionmaker.

Glover's allegation that Guillory's decision was the result of union pressure exerted during a meeting between union representatives and the Mayor-President likewise fails to establish any discriminatory motivation in Glover's termination. Without more, the assertion that Guillory met with the union to discuss the Police Chief's disciplinary decisions does not undermine LCG's nondiscriminatory reason for firing Glover. Because Glover offers no evidence that the meeting had anything to do with his race, there is no basis on which to find discriminatory intent on the part of Guillory or LCG. *See TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002) ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.").

Finally, Glover contends that LCG's "loss of confidence" in his performance was pretextual because LCG did not provide this reason until Glover commenced legal action. He also asserts that he did not make the underlying misrepresentations on which LCG bases its "lost confidence." But Glover's argument along these lines fails for the same reason his other arguments do: Neither contention shows pretext or suggests an improper discriminatory motive behind his firing. First, LCG was not required to

provide a reason to Glover when he was terminated. *See Glover v. Lafayette Consol. Gov't*, 2024-310 (La. App. 3 Cir. 11/20/24), 402 So. 3d 81, 83–84, *writ denied*, 2024-01568 (La. 2/28/25), 402 So. 3d 490. So that omission (which LCG disputes) does not show that LCG's stated reason for firing Glover was pretextual, or undermine its validity, or substantiate a connection between his termination and his race. Second, regardless of whether Glover made the underlying misrepresentations, there is evidence to show that LCG believed he did. And "[b]ecause even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee, a plaintiff must offer evidence to support an inference that the employer had a [discriminatory] motive, not just an incorrect belief." *Haverda v. Hays County*, 723 F.3d 586, 596 n.1 (5th Cir. 2013); *see also LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). Glover points to no such evidence.

Because the summary judgment record, viewed most favorably to Glover, does not show any racial motivation for his termination as Police Chief by LCG, Glover has failed to meet his burden "to prove that the defendant's proffered reasons" for firing him "were a pretext for discrimination." *Mayberry*, 55 F.3d at 1089; *see also Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019), *as revised* (July 2, 2019) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.").

The judgment of the district court is AFFIRMED.

Stephen A. Higginson, *Circuit Judge*, dissenting:

Thomas Glover, the first Black Chief of Police at the Lafayette Police Department, was fired ten months into his tenure without documentation of the reasons for his firing. The Lafayette City-Parish Consolidated Government (LCG) has claimed, without providing record evidence, that it fired Glover following a single citizen's complaint to an LCG councilman about another member of the police force. Even though Glover explained that he *had* ordered an investigation into the officer in question—and there is no contemporaneous evidence in the record showing Glover was untruthful— LCG asserts that Glover made "misrepresentation[s]" in his responses, necessitating immediate termination. LCG similarly claims that it informed Glover at the time of termination that he was being fired "due to a loss of confidence" over the misrepresentations. However, before the EEOC and before the district court, LCG alleged that it terminated Glover because he had "other recent performance deficiencies," in addition to the misrepresentations.

The majority holds that Glover has failed to show that LCG's reasons for terminating him were pretextual. But the district court never reached the employer's rationales in the first instance, and thus never analyzed whether LCG's shifting reasons for termination could show pretext.[1] Because I would remand to the district court to perform this fact-heavy analysis, I respectfully dissent.

When courts evaluate a nondiscriminatory reason for termination, "the ultimate issue is the employer's reasoning *at the moment* the questioned

---

[1] I agree with the majority that the appointment of an interim replacement for Glover raises a fact dispute as to his prima facie case and that further evaluation under the subsequent steps of the *McDonnell Douglas* framework is required.

employment decision is made[.]" *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) (emphasis in original). If, as here, there is "no contemporaneous written documentation" of the reasoning for the decision, the issue is ripe for jury consideration. *Laxton v. Gap Inc.*, 333 F.3d 572, 580 (5th Cir. 2003). Documentation that "do[es] not provide any reason for [defendants'] decisions to dismiss . . . employees" is insufficient to carry the employers' burden. *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 903 (5th Cir. 2012).

Here, LCG has provided *no* contemporaneous evidence of its evolving reasons for terminating Glover. In fact, the very first record evidence of any reason for Glover's termination is contained in LCG's response to Glover's EEOC complaint, which was submitted when LCG faced the prospect of litigation over one year after Glover's termination. Before the district court, LCG introduced the testimony of two individuals who were allegedly present at the termination, but we have previously rejected this type of "*post hoc* evidence" as insufficient to establish a nondiscriminatory reason for termination. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 238 (5th Cir. 2016) (holding that there remained a genuine issue of material fact as to the reason for plaintiff's termination where the employer relied entirely on *post hoc* evidence, including deposition testimony that was contradicted by plaintiff's own deposition testimony).

Beyond LCG's *post hoc*, unsubstantiated assertion that it informed Glover he was being terminated for "misrepresentations," LCG has since articulated another justification for his termination apart from the reason they claim to have given Glover, namely an alleged issue with crime statistics.[2] But this asserted rationale is similarly insufficient. "Inconsistent"

---

[2] Although not yet at issue in this case, both the initial reason for "loss of confidence" and the reason of poor performance seem themselves implausible. We have

reasons for an adverse action may create an inference of pretext. *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002); *see also Hager v. Brinker Texas, Inc.*, 102 F.4th 692, 704 (5th Cir. 2024) ("A defendant's shifting . . . reasons for objectionable conduct can provide sufficient evidence of pretext."); *Staten v. New Palace Casino, LLC.*, 187 F. App'x 350, 359 (5th Cir. 2006) (per curiam) ("When an employer offers inconsistent explanations for its employment decision at different times, as here, the jury may infer that the employer's proffered reasons are pretextual."). Crucially, again, the district court never reached the issue of pretext, and thus did not have the opportunity to weigh whether the justifications for Glover's termination were inconsistent and insufficiently documented.

With great respect, I see issues of disputed fact that should be left to the district court to resolve.

---

not seen contemporaneous record evidence that LCG would generally consider a single citizen complaint to a councilmember sufficient to terminate the Chief of Police or that LCG investigated whether Glover's statements were correct. And, as Glover alleged in his complaint and LCG does not appear to rebut, "crime statistics are not calculated until after the end of the year," making it appear unlikely that LCG had an actual performance basis for firing Glover.